**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHERMO TOURE,

        Plaintiff,

        v.

DISTRICT OF COLUMBIA, *et al.*,

        Defendants.

Case No. 24-cv-2843 (JMC)

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to dismiss pro se Plaintiff Chermo Toure's amended complaint by Defendants District of Columbia and former and current Metropolitan Police Department (MPD) officials Pamela A. Smith, Jeffery Carroll, and Marvin Haiman.[1] For the reasons stated below, the moving Defendants' motion to dismiss is **GRANTED** in (large) part and **DENIED** in part. As to these Defendants, the Court only allows Toure's claim for assault and battery against the District of Columbia to go forward. Toure's constitutional and other common law claims against the District of Columbia, and all his claims against the former and current MPD officials, are dismissed.[2] Toure's remaining motions are also **DENIED**.[3]

---

[1] Toure also named MPD as a defendant. As the Court discusses below, MPD is not an entity that may be sued and the Court construes his allegations against MPD as against the District of Columbia.

[2] As the Court will explain later, Toure also names MPD Officer Nicholas King as a defendant. King has not yet appeared in this case, so this order does not impact Toure's claims against him.

[3] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

## I.    BACKGROUND

Chermo Toure lives in New York. ECF 3 ¶ 10. He traveled to Washington, D.C. on August 30, 2024. *Id.* ¶ 18. According to his amended complaint, he "decided to experience nightlife in the District" and went to a rooftop bar at the Hotel Washington, 515 15th Street NW. *Id*. ¶ 18. He left the bar in the early morning hours of August 31, sometime between 12:00 AM and 3:00 AM, "to get a closer view of the lights on the White House." *Id*. ¶ 19.

Toure alleges that as he "walked toward the White House, at or near 703 15th Street NW," he "encountered a uniformed law enforcement officer who Plaintiff believed to be an employee of the Metropolitan Police Department (MPD)." *Id*. ¶ 20. Toure alleges that the officer "suddenly and without provocation punched" him. *Id.* When he "questioned why the officer had hit" him, the officer "placed what appeared to be brass knuckles or rings on his right hand and proceeded to assault" Toure again. *Id*. ¶ 21. Toure alleges that he "told the officer that such behavior was inappropriate for a law enforcement officer." *Id.* ¶ 22.

Toure then alleges that someone, "possibly the officer," called a taxi for him. ECF 3 ¶ 23. He took the taxi to the nearest police precinct to report the incident. *Id.* ¶¶ 22–23. At the precinct, he filed an incident report about his assault. *Id.* ¶ 24. He was later transported to Howard University Hospital to receive treatment for his injuries, which he describes as "lacerations to the face." *Id*. ¶¶ 24–25.

Toure initially filed his lawsuit on September 26, 2024. ECF 1. He amended his complaint on October 11, 2024, before any Defendant appeared. ECF 3. At the time he submitted his amended complaint he did not know who assaulted him, so his amended complaint identified "John Doe Officer" as a defendant. His amended complaint also named as Defendants the District of Columbia, MPD, former MPD Chief of Police Pamela Smith, Interim Chief of Police Jeffery

Carroll, and former MPD Chief of Staff Marvin Haiman. According to Toure, the District of Columbia and these high-level MPD officials are responsible for what happened to him because they "made the decision to employ and deploy John Doe Officer with actual or constructive knowledge of his overly-excessive nature"; "ordered, directed, authorized, and affirmatively caused" the assaulting officer to use force against Toure; and also because he alleges that the officer was acting in accordance with these Defendants' "directives and District policies, practices, and customs." *Id* ¶¶ 31–32. The Court construes Toure's amended complaint as bringing claims under 42 U.S.C. § 1983 for violations of the First, Fourth, and Fifth Amendments to the United States Constitution, as well as common law claims for negligence per se and assault and battery.[4] He demands $10 million in damages. *Id.* ¶ 40(e).

Defendants—excluding the John Doe Officer—moved to dismiss Toure's amended complaint on April 8, 2025. ECF 10. After the Court advised Toure of the consequences of not responding to Defendants' motion, ECF 11, Toure filed his opposition, ECF 14. Toure continued to file additional responses and surreplies. ECF 15; ECF 20; ECF 41. While briefing on Defendants' motion to dismiss was underway, the Court granted Toure's request to conduct early discovery to identify his purported assailant. ECF 40 at 9. After that initial round of discovery,

---

[4] Toure's amended complaint indicates that one of his causes of action arises under the Fourteenth Amendment, which does not apply to the District of Columbia. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Accordingly, the Court construes Toure's claim as one under the Fifth Amendment, which does apply to the District. *See id.* Although Toure's complaint identifies two causes of action for violations of the Fourth Amendment, he discusses "Free Speech and Assembly—Retaliation" in connection with one of them. ECF 3 ¶¶ 37–38. So, the Court assumes he meant to invoke the First Amendment, as do Defendants. ECF 10-1 at 3. Finally, the initial paragraph of Toure's amended complaint references the Eighth Amendment, ECF 3 ¶ 1, as does his request for relief, *id.* ¶ 40(a). But the Court assumes he did so mistakenly and does not understand him to bring an Eighth Amendment claim. The Eighth Amendment prohibits "cruel and unusual punishments" and "punishment" for Eighth Amendment purposes does not occur until after the government "has secured a formal adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979); U.S. Const. amend. VIII. That never happened here—Toure was not prosecuted for anything. Further, Toure does not otherwise mention the Eighth Amendment in his complaint, including in his cause of action section, and does not purport to bring such a claim in his responsive filings before the Court. However, the Court observes that all Toure's constitutional claims are dismissed against Defendants for the reasons outlined in this order.

3

Toure identified his assailant as MPD Officer Nicholas King and moved for leave to add him as a defendant on January 5, 2026. ECF 60. On January 12, 2026, the Court granted Toure permission to substitute Officer King for the John Doe Officer. Jan. 12, 2026 Min. Order; ECF 61. Officer King has not been served or appeared in this case and thus is not a party to the pending motion to dismiss.

After receiving a sustained influx of filings from Toure, the Court entered a limiting order requiring him to first seek leave of court before submitting anything else on the docket, unless the Court directed otherwise. ECF 40. That order has done nothing to temper the frequency of Toure's filings. Accordingly, in addition to Defendants' motion to dismiss, also pending are Toure's requests for leave to file an assortment of motions and notices: motion for "Leave to File Notice of Potential New Defendants" (ECF 63); motion for "Leave to File Notice On Culture of Impunity" (ECF 64); "Request for Leave to Have an Emergency Hearing and to File Exhibits Second Amended Complaint" (ECF 69); motion for "Leave to File Clerk's Entry of Default" (ECF 71); and motion for "Request for Leave to File (Nunc pro tunc) Reply in Support of Request for Entry of Default" (ECF 73). The Court resolves these outstanding motions after addressing the moving Defendants' motion to dismiss.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). However, "the [C]ourt need not accept inferences drawn by plaintiff if

4

[such] inferences are not supported by the facts set out in the complaint." *Id.* Nor is the Court required to accept "a legal conclusion couched as a factual allegation," or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

Because Toure is pro se, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even a pro se plaintiff "must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011).

## III.    ANALYSIS

### A.  Motion to Dismiss

Toure named MPD as a defendant, but the Court dismisses it from this case at the outset. Toure concedes Defendants' argument that MPD is not an entity that can be sued and asks that "the claims against it . . . be construed against the District of Columbia." ECF 14 at 1; *see also Hunt v. District of Columbia*, No. 02-7044, 2002 WL 1997987, at *1 (D.C. Cir. Aug. 29, 2002) (per curiam) (recognizing that the "Metropolitan Police Department is *non sui juris*"). The Court now proceeds to address Toure's claims against the District and individual Defendants.

#### 1.  The Court Dismisses Toure's Constitutional Claims Against the District.

The Court agrees with Defendants that Toure fails to state a claim for any constitutional violation against the District of Columbia. Toure invokes 42 U.S.C. § 1983, which creates a private cause of action against any person who, under color of state law, deprives an individual of a constitutional right. But a municipality, like the District, can only be held liable under § 1983 "where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S.

658, 691 (1978). Accordingly, to state a § 1983 *Monell* claim against the District, Toure must allege facts supporting two prongs—not only must he allege a constitutional violation, but also that a "custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

All of Toure's constitutional claims against the District fail at the second prong. However, because Toure is *pro se*, the Court will address the first prong as well and explain why his allegations do not support any claim that many of his constitutional rights were violated—except for his claim for excessive force under the Fourth Amendment.

### a. First Prong, Predicate Constitutional Violation

Most of Toure's claims fall out at the first prong—his failure to allege a viable, predicate constitutional violation. Recall that Toure alleges that the MPD officer violated his First, Fourth, and Fifth Amendment rights by assaulting him. But the only plausible constitutional claim the Court can glean from Toure's amended complaint is under the Fourth Amendment. That Amendment prohibits law enforcement officers from making unlawful seizures by using excessive force, among other things. *See, e.g.*, *United States v. Castle*, 825 F.3d 625, 632 (D.C. Cir. 2016) (quoting *Brown v. Texas*, 443 U.S. 47, 50 (1976)) (recognizing that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person, and the Fourth Amendment requires that the seizure be 'reasonable.'"). If this MPD officer, while "on-duty" and "within the scope of his employment," "attacked and severely beat" Toure when Toure did not "direct any words or physical action towards [the] MPD officer, or present himself in any way that [the] MPD Officer [could] interpret as threatening," as his amended complaint alleges, ECF 3 ¶¶ 3, 5, 7, 15, that use of force could be unconstitutional. *See, e.g.*, *Johnson v. District of Columbia*, 528 F.3d 969, 976 (D.C. Cir. 2008) (holding that "[a]n officer's act of violence violates

the Fourth Amendment's prohibition against unreasonable seizures if it furthers no governmental interest, such as apprehending a suspect or protecting an officer or the public").

But Toure's amended complaint does not support his other constitutional claims. The First Amendment is inapplicable on the facts alleged. ECF 3 ¶¶ 38–39 (identifying causes of action for "Free Speech and Assembly—Retaliation"). To state a claim for First Amendment retaliation, Toure must allege that "(1) he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016). Here, Toure's allegations make plain that he was *not* engaged in any protected activity before the officer assaulted him. To the contrary, he claims that he had not done or said anything at all before the officer "suddenly" struck him. ECF 3 ¶ 20; *see id.* ¶ 5.

In his responsive filings, Toure points to the fact that he questioned the officer about why the officer had punched him and identifies his statement to the officer as his protected "speech." But—clearly—that questioning occurred *after* the officer hit him. Toure's alleged speech after he was assaulted cannot establish a causal connection between his protected activity and the alleged retaliatory conduct. And based on Toure's description of what happened, Toure's encounter with the officer was a single, discrete event that must have occurred within a matter of minutes. That the officer continued to assault him after he protested, as Toure claims, does not change the Court's causation calculus.

Toure's Fifth Amendment claim fares no better. To the extent that he intended to plead a violation of his substantive due process rights, the Court agrees with Defendants that his amended complaint states no such claim. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)

(recognizing that substantive due process claims may only proceed if the claim is not already "covered by a specific constitutional provision"; here the Court has found that Toure's amended complaint states a potential claim under the Fourth Amendment). And Toure's claim that the officer assaulted him because of his race in violation of his equal protection rights comes up short too. "[B]y virtue of the Fifth Amendment's guarantee of due process of law" the District of Columbia must "treat similarly situated persons alike." *Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996). That certainly prohibits a law enforcement official from singling Toure out for abusive treatment because of his race. But, as Defendants point out, ECF 28 at 2, Toure provides no facts to support his conclusion that the officer "assaulted [him] because of his black-African American identity," ECF 3 ¶ 4, or his "belief" that "similarly situated people were not attacked, detained, and assaulted," *id.* ¶ 32; *see, e.g.*, *Mpras v. District of Columbia*, 74 F. Supp. 3d 265, 271–72 (D.D.C. 2014) (dismissing plaintiff's equal protection claim given his failure to "allege any facts" regarding "who these other persons are or how they were similarly situated"). Toure's amended complaint does not include any information about discriminatory statements the officer made, past conduct suggesting the officer's bias toward members of his protected class, specific comparators, or anything else that could potentially support such a claim. His "[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory statements," are not sufficient to state a Fifth Amendment claim. *Iqbal*, 556 U.S. at 678.

In sum, the only potentially viable constitutional cause of action here is Toure's Fourth Amendment claim. But even that claim must be dismissed against the District because Toure does not sufficiently plead municipal liability, which the Court explains next.

### b.  Second Prong, Causation by the Municipality

As the Court observed earlier, "municipalities are liable for their agents' constitutional torts *only* if the agents acted pursuant to municipal policy or custom." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (emphasis added) (citing *Monell*, 436 U.S. at 694). There are several ways that a plaintiff can state a claim for municipal liability—by alleging facts that the municipality "explicitly adopted the policy that was the moving force of the constitutional violation," "knowingly ignore[d] a practice that was consistent enough to constitute custom," or failed to "respond[] to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations," *id.* at 39, for example by failing to train its employees, *see Harris*, 489 U.S. at 387–88. A plaintiff could also plead a *Monell* claim by alleging that an authorized municipal policymaker made the decision that resulted in the constitutional deprivation. *See Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014). Regardless which theory of municipal liability a plaintiff advances, the plaintiff must "refer[] to specific incidents that plausibly show a custom or pattern of behavior." *Patrick v. District of Columbia*, 179 F. Supp. 3d 82, 87 (D.D.C. 2016). A bare allegation that a municipality has a "custom, policy or practice of condoning the violation of constitutional rights," absent any facts reflecting such a policy, cannot support a *Monell* claim—it is merely "a conclusory recital of the elements of a claim." *Sheikh v. District of Columbia*, 77 F. Supp. 3d 73, 85 (D.D.C. 2015).

Conspicuously absent from Toure's amended complaint are factual allegations supporting any theory of municipal liability. Instead, he strings together boilerplate language that does little more than recite the legal standards for *Monell* liability. For example, he alleges his "belief" that the assaulting officer acted "pursuant to the District's policies, practices, and customs," but never alleges what those policies, practices, and customs are. ECF 3 ¶ 30; *see also id.* ¶ 31. His claim

that "MPD has a history of directing excessive and unreasonable force to detain and oftentimes arrest non-violent and law-abiding civilians," *id*. ¶ 30, has no factual support—no information about the timeframe he is talking about, what these incidents are (even generally), or whether they are sufficiently similar to what he claims occurred here to constitute a municipal custom. His bare assertions that his assault occurred because of the "decisions of policymakers," including the District's alleged "failure to properly train and supervise its officers," are also insufficient. *Id.* ¶ 11. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Toure's amended complaint includes no allegations from which this Court could plausibly infer that he was assaulted because of any known deficiency with the District's training of its officers. *See, e.g.*, *Roe v. Wilson*, 365 F. Supp. 3d 71, 83 (D.D.C. 2019) (dismissing *Monell* claim because a mere allegation that the District "made a serious mistake in hiring" the offending employee was not enough to imply "*a policy* of failing to properly screen employees" (quoting *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015))).

Toure's oppositions, notices, and replies contain the same kind of boilerplate language to defend his *Monell* claim. But in some of his responses he includes statistical information to support his argument that excessive force—particularly against Black people—is prevalent in the District of Columbia. ECF 20. For example, in describing a "national pattern" of "police brutality," Toure asserts that "in [the] Fiscal Year 2024, there was a 7% increase of complaints made against MPD from the previous year; 13% of which accounted for unnecessary or excessive force . . . and 94% of force was used against the black community." ECF 20 at 3–4. He cites an annual report of the District of Columbia Police Complaints Board, which he attaches to one of his surreplies as an exhibit. ECF 20-1. In subsequent filings and notices of authority, he provides additional

information about the District's crime rate and MPD complaints and conduct. *See, e.g.*, ECF 20-2; 41-3.

These statistics, which are not in Toure's amended complaint, do not save his *Monell* claim.[5] Even taking as true that there was an increase in excessive force complaints against MPD officers the year that Toure was assaulted, he still does not identify any District policy, practice, or custom at play in his case. Is there some written policy that Toure claims the officer followed that resulted in his assault? What District "practice" does Toure think the officer was adhering to? General statistics about the number of complaints made against officers in this District do not answer those questions. And Toure never alleges any pattern of incidents like what occurred here—MPD officers punching people as they are walking down the street—to make plausible his claim that the officer was acting pursuant to a District custom. An allegation about an increase in excessive force complaints, standing alone, does not give rise to any reasonable inference that there was a known practice or custom of this kind of conduct that MPD ignored. Otherwise every plaintiff suing a police officer for excessive force in Washington, D.C. would have a *Monell* claim against the District by virtue of this general statistical information.

Because Toure has pleaded only conclusory allegations to support a claim for municipal liability against the District, the Court dismisses all his constitutional claims against the District of Columbia, including for alleged violations of the Fourth Amendment.

---

[5] Typically, the Court is confined to considering the complaint's allegations to determine whether the complaint states a viable claim. Parties are not permitted to amend their complaint through oppositions to motions to dismiss. That being said, the Court is also required to be more forgiving to *pro se* litigants. The Court must "consider a *pro se* litigant's complaint in light of all filings, including filings responsive to a motion to dismiss, which here includes [the Plaintiff's] opposition to the motion to dismiss and attached exhibits." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024). The Court also observes, however, that Toure has filed more responses than he is entitled to file. Each filing sets forth new information that he claims supports his claims. His serial filings make it difficult not only for the Court, but also for Defendants to understand Toure's position. Toure is *pro se,* but he still must follow the rules. The Court considers Toure's additional filings here, but warns that in the future he will be limited to filing one opposition in response to an opposing party's motion, absent extraordinary circumstances, to ensure fairness in the proceedings.

### 2. Individual Capacity Claims Against Smith, Carroll, and Haiman

Toure's constitutional claims against Smith, Carroll, and Haiman must be dismissed for the same reasons. The Court has already found that he has not alleged facts supporting a claim that his First or Fifth Amendment rights were violated. And his allegations that these individual Defendants bear any responsibility for the officer's use of force against him are too conclusory to go forward. Because vicarious liability does not apply to § 1983 suits, Toure must allege sufficient facts to make plausible that "each [one], through the official's own individual actions, has violated the Constitution." *Elkins v. District of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012) (quoting *Iqbal*, 556 U.S. at 676). Toure's amended complaint largely discusses these Defendants' alleged conduct collectively, making sweeping assertions about what they purportedly "ordered, directed, authorized, supervised, and contributed to" without setting forth facts to support these conclusions. ECF 3 ¶¶ 12–13. His allegations that these individuals are liable because they are "also responsible for establishing the policies and rules governing the conduct of MPD officers," sounds like vicarious liability. *Id.* ¶ 12. In other words, Toure claims that these former and current officials are responsible because they hold supervisory roles with MPD. *See id.* ¶¶ 12–13. That is insufficient.

Defendants also make a good point concerning Toure's claim that some of these officials may be liable for his assault because they were responsible for the "hiring and vetting of MPD officers" and had "actual or constructive knowledge" of the assaulting officers' "overly-excessive nature." *Id.* ¶¶ 14, 31; ECF 10-1 at 6. Toure did not even know the officer who he claims assaulted him, initially identifying him only as John Doe. Accordingly, his amended complaint included no information about this officer's hiring, training, or history. Without knowing who this officer is or what he may have done in the past, Toure cannot plausibly claim to have a good faith belief that any individual Defendant had information about this officer that makes them responsible for his

conduct. Nor does he allege any specific facts about deficiencies in hiring, training, and supervision that could make any of these Defendants potentially liable for his assault. *See, e.g.*, *Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). The Court thus dismisses Toure's § 1983 claims against Defendants Smith, Carroll, and Haiman.

### 3.   Common Law Claims

#### a.   *Negligence per se*

Toure's amended complaint also alleges that Defendants committed negligence per se. ECF 3 ¶ 1. The Court agrees with Defendants that this claim, too, must be dismissed. "Under District of Columbia law, the default rule for the application of the negligence per se doctrine is as follows: [W]here a particular statutory or regulatory standard is enacted to prevent the type of accident that occurred, an unexplained violation of that standard renders the defendant negligent as a matter of law." *Sibert-Dean v. Wash. Metro. Transit Auth.*, 721 F.3d 699, 702 (D.C. Cir. 2013). "Violation of a statute or regulation may constitute negligence per se only if the statute is meant to promote safety, if the plaintiff is a member of the class to be protected by the statute, and if the defendant is a person upon whom the statute imposes specific duties." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014).

Toure's amended complaint states no claim for negligence per se because he does not identify any statute or regulation that satisfies the requirements for such a claim. Reading his amended complaint liberally, the Court assumes that the references to MPD guidance and statutes in subsection (c) of the "Relief Requested" section of his pleading are the local statutes and regulations that he seeks to rely upon in support of his negligence per se claim. That section of his

amended complaint refers to MPD's Code of Conduct, ECF 3 ¶ 40(c), but MPD's internal codes and policies are not statutes or regulations. *See, e.g.*, *Wanzer v. District of Columbia*, 580 A.2d 127, 133 (D.C. 1990) ("Agency protocols and procedures, like agency manuals, do not have the force or effect of a statute or an administrative regulation."). He also cites D.C. Code § 5–101.03, but that statute enumerates certain duties of the Mayor. Defendants, then, are not persons "upon whom the statute imposes specific duties." *Butler*, 101 A.3d at 1039. D.C. Code § 24–345, which Toure also identifies in that section of his amended complaint, ECF 3 ¶ 40(c), does not exist.[6] And with respect to the D.C. criminal statutes that he also includes in this section, Toure concedes "that negligence per se based on D.C. criminal code may be subject to dismissal," ECF 15 at 1, and does not respond to Defendants' arguments.[7] In short, the Court does not find that Toure has stated a plausible claim for negligence per se.

### b.  Assault & Battery

Under D.C. law, an assault is as "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim," and "[a] battery is an intentional act that causes a harmful or offensive bodily contact." *Etheredge v. District of Columbia*, 635 A.2d 908,

---

[6] It is possible—although by no means clear to the Court—that Toure was attempting to cite to D.C. Law 24-345, the Comprehensive Policing and Justice Reform Act of 2022. This law contains a provision, codified at D.C. Code § 5-351.01, which limits the situations where "deadly force" may be used by a law enforcement officer. D.C. Code. § 5-351.01(b). Although the Court must construe Toure's pleadings liberally, the Court does not find that Toure has brought a claim under this provision. Toure does not contest Defendants' assertion that the provision he did cite to—D.C. Code. § 24-345—does not exist. *Compare* ECF 10-1 at 10, *with* ECF 14 at 3, *and* ECF 15 at 1; *see also Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (arguments not addressed may be deemed conceded). Further, Toure does not make any argument for why this statute may support his negligence per se claim, including a lack of any argument for why this statute was violated by any specific Defendants, let alone why it qualifies as a statute meant to give rise to negligence per se liability.

[7] Toure's concession makes sense. Although "violation of a criminal statute can create civil liability," *Marusa v. District of Columbia*, 484 F.2d 828, 834 (D.C. Cir. 1973), the statute must be directed to a specific subset of the population with "specific guidelines" directed at that subset, *Smith v. Trump*, No. 21-cv-02265, 2023 WL 417952, at *6 (D.D.C. Jan. 26, 2023), *aff'd*, No. 23-7010, 2023 WL 9016458 (D.C. Cir. Dec. 29, 2023) (per curiam). Toure's amended complaint references D.C. Code §§ 22-402 and 22-404 (assault offenses), which "are generally drawn statutes applicable to all and prohibit certain behaviors." *Id.* at *9. Accordingly, these statutes could not sustain a claim of negligence per se, even if Toure had not conceded the point. *See id.* (dismissing negligence per se claim predicated upon a violation of a provision of the D.C. Criminal Code that proscribes physical violence).

916 (D.C. 1993). Toure's amended complaint sufficiently states a claim for assault and battery against Officer King, who he says "attacked and severely beat" him. ECF 3 ¶ 3.

Although the District cannot be held vicariously liable for its employees' constitutional violations, "[i]t is settled that the District of Columbia may be sued under the common law doctrine of respondeat superior for the torts of its police officers acting within the scope of their employment." *District of Columbia v. Davis*, 386 A.2d 1195, 1202 (D.C. 1978). Toure has done enough at this early stage to allege that the officer who assaulted him was acting within the scope of his employment—that he was employed by the District as a MPD officer, in uniform, and thus on duty when the incident happened. ECF 3 ¶ 20. So, the Court will permit Toure's assault and battery claim against the District to proceed.

The Court does not reach the same conclusion about Toure's assault and battery claim against Defendants Smith, Carroll, and Haiman. "[A]s a matter of law only the employer, the District of Columbia, [can] be held liable for the tortious acts of one of its employees." *King v. Kidd*, 640 A.2d 656, 666 (D.C. 1993). Supervisory employees, who are not "employer[s]" in an agency sense, are not liable for the conduct of their subordinates under a respondeat superior theory. *See id.* (citing *Robertson v. Sichel*, 127 U.S. 507 (1888) for the proposition that a "government supervisory employee cannot be held vicariously liable for acts of subordinates; plaintiff must prove supervisor was personally negligent in discharge of his or her own duties"); *see also Haynesworth v. Miller*, 820 F.2d 1245, 1259 (D.C. Cir. 1987) ("Analytically, high-level public officials[] are not employers of their subordinates but rather are fellow governmental servants, and it thus is inappropriate to hold them liable on the basis of respondeat superior."), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). For the reasons discussed earlier, Toure has not plausibly alleged that these individual Defendants had any personal

15

involvement in his assault. His assault and battery claims against Defendants Smith, Carroll, and Haiman are dismissed.

*    *    *

To summarize, the Court has dismissed the Metropolitan Police Department from this case because it is not the proper entity to sue. The Court has also dismissed Defendants Smith, Carroll, and Haiman from this case. The only claim against the District of Columbia that the Court has determined can go forward is Toure's claim for assault and battery. The Court has dismissed all remaining claims against the District.

### B. Remaining Motions

The Court next addresses Toure's remaining motions and denies each one of them. By minute order on March 17, 2026, the Court denied Toure's motion for leave to file an amended complaint without prejudice.[8] *See* Mar. 17, 2026 Min. Order. Toure's motion for leave to file a notice of potential new defendants, ECF 63, is denied as moot accordingly.

His motion for leave to file notice on culture of impunity, ECF 64, is also denied. That motion concerns the resignation of Defendant Smith as Chief of Police, who is no longer a Defendant. Nothing Toure has submitted to the Court in this or any other of his filings supports the notion that her resignation has any plausible relation to this case.

ECF 69 is a "Request for Leave to Have an Emergency Hearing and to File Exhibits Second Amended Complaint." The Court has already denied Toure's motion for leave to amend his complaint without prejudice and his motion identifies no emergency requiring a hearing before the initial scheduling conference. This request is also denied.

---

[8] Before ruling on those motions, the Court reviewed the amended complaint to determine whether Toure's proposed amendments cured any deficiencies identified in this ruling on the moving Defendants' motion to dismiss. The Court did not observe any additional, non-conclusory allegations that alter the Court's determination.

Finally, Toure's motion for leave to file entry of default against the District of Columbia, ECF 71, and subsequent motion for leave to file a supplement in support of that motion, ECF 73 are also denied. Toure contends that the District of Columbia is in default because it has not responded to "the operative complaint as amended by the substitution of Officer Nicholas King as a named defendant." ECF 71-1 at 1. Far from defaulting in this case, the District of Columbia has appeared, has responded to Toure's amended complaint by filing a motion to dismiss, and has been actively litigating this case. The District did not need to refile its motion to dismiss after the Court granted Plaintiff's request to substitute Officer King for John Doe. And to the extent that Toure meant to seek default against Officer King, that request is also improper. Because Toure is proceeding *in forma pauperis*, the United States Marshals Service is responsible for service of process. *See* 28 U.S.C. § 1915(d). Summons were only recently issued for Officer King. ECF 62. The docket does not reflect that Officer King has been served yet, so he cannot be in default.

Finally, to reiterate what the Court stated in its March 17, 2026 minute order and address any questions the Parties may have about next steps in this case: The Court will soon issue a separate order setting out a schedule for further proceedings, including for litigating Plaintiff's claims against Defendant King and the District of Columbia, which will also include a deadline for amending pleadings. *See* Mar. 17, 2026 Min. Order.

## IV.    CONCLUSION

Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss, ECF 10, is **GRANTED** as to:

- All claims against MPD, which is not a proper defendant in this case;

- All claims against Defendants Smith, Carroll, and Haiman;

- All constitutional claims against the District of Columbia;

17

- Negligence per se claim against the District of Columbia, and is **DENIED** only as to:

- Assault and battery claim against Defendant the District of Columbia; it is further

**ORDERED** that Toure's motion for leave to file a proposed notice of other intended defendants, ECF 63; motion for leave to file a proposed notice on culture of impunity, ECF 64; motion for leave to file request for emergency hearing and to file exhibits second amended complaint, ECF 69; motion for leave to file a proposed clerk's entry of default, ECF 71; and motion for leave to file a proposed reply in support of the proposed entry of default, ECF 73; are **DENIED**.

The Court will continue until further notice to enforce its limiting order, requiring Toure to first seek leave of court before filing a submission in this case, unless otherwise directed. *See* ECF 40.

**SO ORDERED.**


Date:    March 23, 2026                    _____
                                           JIA M. COBB
                                           United States District Judge